# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

        Plaintiff,

    v.                                Case No. 09-CR-248

STARSIUS T. BARNES, et al.,

        Defendants.

## ORDER ON THE DEFENDANTS' PRETRIAL MOTIONS

On October 14, 2009, a forty count indictment was returned against 40 defendants. (Docket No. 1.) This case was denominated as complex under this district's local rules, (Docket No. 13), and this court conducted two status conferences to discuss pretrial processing in this matter, (Docket Nos. 156, 157; 226, 227). March 8, 2010 was established as the deadline for the filing of pretrial motions. (Docket No. 227.) A total of 17 defendants filed a total of 90 separate motions.

On March 10, 2010, this court denied various motions filed by numerous defendants. (Docket No. 370.) Although the court granted various defendants the opportunity to re-file various motions in conformity with the district's Local Rules, no defendant has exercised this option. On March 22, 2010, the government filed a consolidated response to the remaining motions of the defendants. (Docket No. 375.) Four defendants submitted timely replies. (Docket Nos. 376, 378, 379, 380.) Ryan McMorris submitted an untimely reply and has not requested leave to excuse his tardiness. (Docket No. 381.) Accordingly, the court shall disregard this filing. Allen Sutton submitted a reply where he acknowledges its tardiness and asks the court "to accept this late filing based on excusable neglect," but provided no further explanation. (Docket No. 382.) Without more

that an unsupported statement, the court is unable to find a basis to accept this tardy filing, and therefore this reply shall also be disregarded.

Dates for a final pretrial conference and the commencement of a jury trial have yet to be scheduled by the Honorable Lynn Adelman.

## DISCLOSURE OF CONFIDENTIAL INFORMANTS

Fourteen defendants have filed motions related to the disclosure of confidential informants ("CI"). (Docket Nos. 275, 281, 282, 286, 301, 308, 321, 326, 332, 340, 342, 354, 364, 366.)

In identical motions, 4 defendants, **Christopher Williams, Maceo Collins, Brandon C. Evans,** and **Darrick Holmes** move the court to order the government to disclose the names of confidential informants that they intend to call as witnesses at trial of the above captioned case and to produce them for interviewing. In support of this motion, counsel cites to <u>Rovario v. United States</u>, 353 U.S. 53, 55 (1957)." (Docket Nos. 275, 286, 308, 326.) Three of these defendants, **Christopher Williams, Brandon C. Evans,** and **Darrick Holmes,** have also separately filed identical motions seeking the disclosure of "the identities of all informants who are participants in the alleged crimes charged in the Indictment" and cite <u>McLawhorn v. North Carolina</u>, 484 F.2d 1 (4th Cir. 1973), in support. (Docket No. 274, 317, 325.)  In these two separate motions, these defendants seek disclosure of the two categories of confidential informants, those who were transactional witnesses and those who the government intends to call to testify at trial. No further specificity is provided.

Other defendants make more specific demands, identifying, at least in part, the particular confidential informants whose identities they seek disclosed. The following specific disclosure requests have been made.

**Ronnie McMorris** seeks the disclosure of "CI 2, 5, 6, 7, 8, 9, 12, 13, 14, 15, 17, 18, and 'CHS'." (Docket No. 281 at 1.) Mr. McMorris identifies CHS and CI-17 as transactional witnesses

in that they claim to have conducted a drug transaction directly with Mr. McMorris. (Docket No. 281 at 1.) As for the other identified CIs, Mr. McMorris contends that disclosure is appropriate because "all claim to be integrally involved in the Vice Lords drug distribution ring in Racine, and they do not know Ronnie McMorris, or they have never witnessed McMorris conduct any drug transaction." (Docket No. 281 at 1.) Mr. McMorris seeks that the court order the immediate disclosure of these informants. (Docket No. 281 at 6.)

**Tyrone Malone** seeks the disclosure of the following confidential informants whom Mr. Malone identifies as transactional witnesses in that they are alleged to have seen Mr. Malone engaged in drug transactions or engaged in transactions directly with Mr. Malone: "CI-6, CI-8, CI-10, CI-14, CI-15, CI-20, CI-21, and 'CHS'." (Docket No. 282 at 1.) Mr. Malone also seeks disclosure of:

> Witnesses who could provide testimony helpful to the defense: The remaining informants all claim to have intimate knowledge of the Vice Lords' drug operations, and said informants either have no knowledge of Tyrone Malone, or have never witnessed Tyrone Malone conduct a drug transaction, or claim that Tyrone Malone has not dealt drugs within the time of the alleged conspiracy.

(Docket No. 282 at 2.) Mr. Malone also requests that the court order immediate disclosure. (Docket No. 282 at 7.)

**Calvin Hunter** seeks the disclosure of the following transactional witnesses who claim to have witnessed Mr. Hunter conduct drug transactions or to have conducted drug transactions directly with Mr. Hunter: "CI-1, CI-3, CI-4, CI-6, CI-7, CI-9, CI-10, CI-12, CI-13 and CI-20." (Docket No. 321 at 1-2.) Mr. Hunter also seeks the identities of all other informants, i.e. "CI-2, CI-5, CI-8, CI-11, CI-14, CI-15, CI-17, CI-18 and CI-21," because they are "[w]itnesses who could provide testimony helpful to the defense" in that

> [t]he remaining informants all claim to have intimate knowledge of the Vice Lords' drug operations, and said informants either have no knowledge of Calvin Hunter, or have never witnessed Calvin Hunter conduct a drug transaction, or claim that Calvin Hunter has not dealt drugs within the time of the alleged conspiracy.

3

(Docket No. 321 at 2.) Mr. Hunter also requests that the court order immediate disclosure. (Docket No. 321 at 4.)

**Jarren Gardner** seeks the disclosure of certain identified CIs, but states that it is not clear from the discovery whether these are multiple individuals or the same person. Specifically, Mr. Gardner states:

> Over the course of a number of alleged drug transactions, the informant is referred to in the police reports at different points as "CI 906" (Confidential Informant [No.] 906)–during transactions alleged on 10-16-2008 and 10-27-2008; "CHS" (Confidential Human Source)–during transactions alleged on 06-17-2008; 08-28-2008; 10-22-2008; 11-19-2008; 11-25-2008; 06-18-2009; 08-28-2009; and "CI" (Confidential Informant,)–during transactions alleged on 10-16-2008 and 11-12-2008.

(Docket No. 340 at 2.)

**Tyreese Burton** seeks the disclosure of "CI's 1, 2, 3, 4, 5, 6, 8, 9, 10, 11, 12, 14, 15, 17, 18, and 20." (Docket No. 354 at 1.) Mr. Burton contends that "CI's 3, 5, 8, 9, 15, 18, and 20 are transactional witnesses." (Docket No. 354 at 1.) As for the others, Mr. Burton contends "CI's 1, 2, 4, 6, 10, 11, 12, 14, and 17 are not transactional witnesses, but are nonetheless helpful to the defense and provide exculpatory evidence." (Docket No. 354.) For example, certain of the CIs are alleged to be members of the conspiracy but have stated they do not know Mr. Burton. (Docket No. 354 at 5-6.) Mr. Burton also seeks that the identities of these CIs be disclosed immediately so as to permit him sufficient time to conduct an appropriate investigation of these individuals. (Docket No. 354 at 7-8.)

**Allen Sutton** seeks the identities of

> confidential informants 7, 20, 21, and 22 as well as any confidential informant used by the government in any controlled phone call or controlled drug buy, whether charged or uncharged, in which Sutton was allegedly involved as described in the discovery on the grounds that the informants are a transactional witness actively engaged in the alleged conspiracy to distribute controlled substances.

(Docket No. 366 at 1.)

4

**Ryan McMorris** seeks the disclosure of certain identified CIs, specifically "CIs 1, 3, 12, 13, 14, 17, 18, 20, 21, and 22 (transactional witnesses) [who] have each provided statements to law enforcement alleging each has conducted a drug transaction directly with the Defendant." (Docket No. 342 at 1-2.) Mr. McMorris also seeks disclosure of

> CIs 2, 4, 5, 6, 8, 9, 10, 11, and 15 [who] are presumably part of the drug distribution ring or at least have intimate knowledge of the alleged operation. Yet, the above listed CIs mention they do not know the defendant or, in the least, do not know of him ever selling drugs.

(Docket No. 342 at 2.) Mr. McMorris also seeks that the disclosures be made immediately. (Docket No. 342 at 3.)

**Daryll A. Winkler** seeks the disclosure of CI-25 and CI-27, whom he states are alleged transactional witnesses. (Docket No. 320.)

Other defendants have filed motions in which they seek more sweeping disclosures of the confidential informants utilized in this case.

**Ryon Perkins** seeks disclosure of "any individual whether named or unnamed in this Indictment who provided information to the United States Government or its agents which information subsequently led to the indictment and arrest of defendant." (Docket No. 364 at 2.)

**Elliot Campbell** seeks disclosure of "all informants who have contributed to information the government has relied on in building its case against Mr. Campbell." (Docket No. 332 at 2-3.)

**Damien T. Searcy** seeks the court to order

> the government to disclose the identity of the unnamed informant(s) consistent with Rule 501 of the Federal Rules of Evidence and the Sixth and Fourteenth Amendments of the United States Constitution and Roviaro v. United States, 353 U.S. 53 (1957). These informants are transactional eyewitnesses to the events and/or are involved in setting up the controlled buys alleged in the Indictment.

(Docket No. 301 at 1.) Mr. Searcy seeks disclosure within 60 days of the defendant's motion. (Docket No. 301 at 1.)

5

In response, the government states that it has withheld the identities of the confidential informants out of concern for the informants' safety. (Docket No. 375 at 14.) The government states that it intends to disclose the identities of all confidential informants that it intends to call at trial thirty days prior to trial and at that time will disclose all related <u>Brady</u> and <u>Giglio</u> material. (Docket No. 375 at 14.) The government has also agreed to "disclose the identities of the informants who made the controlled buys which form the basis of most of the substantive counts of the indictment thirty days before trial." (Docket No. 375 at 14.) As for other CIs, the government states that it will not disclose the identities of these individuals. (Docket No. 375 at 14.) It states, "In the event that a defendant believes he can show a particularized need for the identity of these individuals, he can seek relief from the government or the court at that time." (Docket No. 375 at 14-15.)

Three defendants have submitted timely replies to the government's response. (Docket Nos. 376, 378, 380.)

**Calvin Hunter** contends that he has a right to learn the identities of nearly all confidential informants in this case on account of the fact that roughly half identify him as a member of the conspiracy whereas roughly the other half state they never saw him deal drugs within the timeframe of the alleged conspiracy. (Docket No. 376 at 2.) Mr. Hunter also objects to the proposed 30 day deadline for disclosure, and contends that such time would be grossly insufficient to permit appropriate investigation into all the identified informants. (Docket No. 376 at 3-4.)

**Tyreese Burton** seeks the disclosure of 17 specific confidential informants, whom he contend may be broken down into the two separate categories of "a) transactional witnesses [(CI's 3, 5, 8, 9, 15, 18, and 20)] and b) witnesses that are not directly transactional to Burton, but are transactional to the conspiracy and are helpful to the defense [(1, 2, 4, 6, 10, 11, 12, 14, and 17)]." (Docket No. 378 at 1, 2, 4.) As for the transactional witnesses, each is alleged to have either sold controlled substances to or purchased them from Mr. Burton. (Docket No. 378 at 2.) As for the

6

other group, Mr. Burton contends that these individuals are either transactional to the conspiracy or subject to disclosure under Brady. (Docket No. 378 at 4.)

**Damien T. Searcy** contends that the government's assertion that it is concerned with the safety of the informants is unsupported by any specific facts that would tend to support a finding that the safety of these informants would be placed at risk if their identities were disclosed. (Docket No. 380 at 3.) Further, Mr. Searcy contends that the 30 days proposed by the defendant in which the defense could investigate confidential informants the government intends to call at trial is insufficient, particularly in light of the fact that the government has had over four years to conduct its investigation of these witnesses. (Docket No. 380 at 3-4.) Thus, Mr. Searcy seeks immediate disclosure of six specific confidential informants whom he has identified as transactional witnesses. (Docket No. 380 at 4.)

It is well-established that as a general rule, the government enjoys a limited privilege of withholding the identity of an informant. See Roviaro v. United States, 353 U.S. 53, 59-60 (1957); United States v. Conforti, 200 F.2d 365, 367-68 (7th Cir. 1952); United States v. Bender, 5 F.3d 267, 269 (7th Cir. 1993). This privilege encourages citizens to perform their obligation to communicate their knowledge of the commission of crimes to law enforcement officials, by preserving the informant's anonymity. United States v. Jefferson, 252 F.3d 937, 940 (7th Cir. 2001). The government need not make any sort of threshold showing such as a risk of retaliation if the informant's identity is disclosed in order to invoke the privilege. United States v. Herrero, 893 F.2d 1512, 1525 (7th Cir. 1990) (quoting Dole v. Local 1942, IBEW, 870 F.2d 368, 372 (7th Cir. 1989)). Rather, the privilege is automatic. Id.

Although automatic, the government's privilege is not absolute. "Where the disclosure of an informer's identity . . . is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." Roviaro, 353 U.S. at 60-61. The defendant

bears the burden of demonstrating that the privilege should yield. United States v. Valles, 41 F.3d 355, 358 (7th Cir. 1994). "The confidential informant privilege 'will not yield to permit a mere fishing expedition, nor upon bare speculation that the information may possibly prove useful.'" Id. at 358 (quoting Local 1942, 870 F.2d at 373).

Disclosure of a confidential informant's identity "must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." Roviaro, 353 U.S. at 62. Factors to be considered are whether the informant is a transactional witness and whether the informant's testimony is relevant and could assist the defendant. Bender, 5 F.3d at 270. "Informants who played major roles in the criminal occurrences will of course offer more significant testimony than those whose participation was peripheral; a showing that a potential defense may depend on the informant's involvement also weighs in favor of disclosure." Valles, 41 F.3d at 358.

Ultimately, to determine whether the government is required to disclose the identity of an informant, the court must balance the public interest in obtaining information necessary to apprehend those who have committed crimes against the defendant's interest in fair trial. Andrus, 775 F.2d at 841; Jefferson, 252 F.3d at 940-41.

As the government recognizes, the defendants are entitled to learn the identities of the confidential informants who the government intends to call as witnesses at trial, as well as the identities of informants who were transactional witnesses. The court finds that the government's agreement to disclose the identities of these individuals 30 days before trial adequately balances the government's privilege and concern for the CIs' safety with the defendants' interests in adequately preparing a vigorous defense.

Thus, this resolves the motions of Christopher Williams, Maceo Collins, Brandon C. Evans, and Darrick Holmes seeking disclosure of the CIs that the government intends to call to testify at

8

trial, (Docket Nos. 275, 286, 308, 326), and the motions of Christopher Williams, Brandon C. Evans, and Darrick Holmes seeking disclosure of transactional witnesses, (Docket No. 274, 317, 325). Jarren Gardner and Daryll A. Winkler (Docket Nos. 340, 320), also seek only the identities of transactional witnesses, and therefore these motions shall also be granted.

Damien T. Searcy has also filed a motion that the court understands to be a request for only transactional witnesses, although he does not identify any particular CI whose identity he seeks disclosed. (Docket No. 301.) Therefore, to the extent that this motion seeks only transactional witnesses it shall be granted.

Numerous other defendants seek disclosure of not only transactional witnesses but also the identities of CIs who are allegedly members of the same conspiracy but gave statements indicating that they either did not know a particular defendant or did not know the defendant to have been involved in the sale of controlled substances. (Docket Nos. 281, 282, 321, 354, 342.) The statement of an alleged co-conspirator that he or she has no knowledge of the defendant's involvement in the conspiracy is of an exculpatory nature. This is because a defendant can argue to the jury that if a CI acknowledged by the government to be a member of the conspiracy did not know the defendant, then the defendant must not have been a co-conspirator. Of course, the counter argument is that not all conspirators necessarily know each other, especially in a conspiracy that spans several years, but the defendant has a right to let the jury draw its own conclusion.

Under such circumstances, the government's informer privilege must yield to ensure the defendant's right to a fair trial. Disclosure close to trial will adequately balance the government's interest in safeguarding its informants and a defendant's right to prepare a vigorous defense. Accordingly, the court shall order disclosure of the identities of the CIs who gave such exculpatory statements not less than 30 days before the commencement of trial. Therefore, the motions of

Ronnie McMorris, Tyrone Malone, Calvin Hunter, Tyreese Burton, Ryan McMorris, (Docket Nos. 281, 282, 321, 354, 342), shall be granted.

Two defendants, Ryon Perkins, (Docket No. 364), and Elliot Campbell, (Docket No. 332), have filed motions seeking broad disclosure of every informant. These requests are overbroad and the defendants have failed in their burden of demonstrating that the government's informant privilege should yield. Accordingly, these motions shall be denied.

**MOTIONS FOR DISCLOSURE OF EXCULPATORY EVIDENCE**

Numerous defendants have filed motions seeking disclosure of exculpatory evidence. (Docket Nos. 272, 288, 294, 300, 316, 323, 337, 344, 359.) For the reasons set forth below, these motions shall be denied.

Due process requires that the government, upon request, disclose evidence favorable to the accused. Brady v. Maryland, 373 U.S. 83 (1963). This duty includes an obligation that the government disclose information that it knows affects the credibility of its witnesses. Giglio v. United States, 405 U.S. 150 (1972). But Brady and its progeny establishes a disclosure rule, not a discovery rule. Weatherford v. Bursey, 429 U.S. 545, 559 (1977); United States v. Higgins, 75 F.3d 332, 334 (7th Cir. 1996). "Disclosure even in mid-trial suffices if time remains for the defendant to make effective use of the exculpatory material." Higgins, 75 F.3d at 335 (citing United States v. Allain, 671 F.2d 248, 255 (7th Cir. 1982)).

The government responds that it is filing its open file policy and therefore shall disclose all exculpatory material. (Docket No. 375 at 18 citing Crim. L.R. 16(a)(2)). However, the government states it will not be disclosing all the specific information sought be defendants because it exceeds the bounds of Brady. (Docket No. 375 at 19.)

When the government is following its open file policy, as it is in this case, requests for disclosure of exculpatory information are entirely unnecessary. To the extent that the defendants

seek additional information beyond that covered by <u>Brady</u> and the progeny thereof, the motions constitute motions for discovery and thus are barred by Crim. L.R. 16(a)(1) for the defendants' failure to include a statement required by Crim. L.R. 16(b).

**MOTIONS FOR DISCLOSURE OF EXPERTS**

Three defendants have filed motions seeking the disclosure of any expert witness testimony the government intends to utilize. (Docket No. 304, 331, 345.) Damien T. Searcy alone addresses the question of when such disclosure should occur. Mr. Searcy requests that the court order that information under Fed. R. Crim. P. 16(a)(1)(G) be disclosed not later than 5 months before trial but later asks for disclosure at least 90 days before trial. (Docket No. 304 at 1.)

The government responds that in accordance with its open file policy and Crim. L.R. 16(a)(4), it will disclose any expert witness information under Fed. R. Crim. P. 16(a)(1)(G) not less than 15 days before trial. (Docket No. 375 at 23.)

The court must deny the defendants' motions. Again, the government is following its open file policy and thus "the Court must not hear any motion for discovery under Fed. R. Crim. P. 16(a) or 16(b) unless the motion complies with" Crim. L.R. 16(b). The defendants' motions do not comply with Crim. L.R. 16(b) and thus shall be denied.

Nonetheless, the court on its own motion shall, in accordance with Crim. L.R. 16(a)(4), order that the government disclose its experts and other material required by Fed. R. Crim. P. 16(a)(1)(G) not less than **45 days** before the commencement of trial. Disclosure 15 days before trial might be sufficient in the ordinary case where the expert testimony is a from a laboratory analyst who tested a suspected controlled substance, a fingerprint analyst, or a ballistics expert, but this is not an ordinary case. As Damien T. Searcy points out, in cases such as this involving large gang-related conspiracies, "expert opinion evidence regarding gang behavior and gang organizations . . ." is not atypical and this is such a case. (Docket No. 304 at 1 (citing <u>United States v. Mansoori</u>, 304

F.3d 635 (7th Cir. 2002)); <u>see also</u> Case No. 05-CR-240 (E.D. Wis.)  If the government intends to introduce such non-routine expert testimony, 15 days is hardly sufficient time to permit a defendant to prepare a rebuttal.

**MOTIONS FOR DISCLOSURE OF DESTRUCTION OF EVIDENCE**

Five defendants have filed motions seeking the court to order the government to disclose whether evidence connected to this case has been destroyed. (Docket Nos. 276, 303, 291, 333, 350.) The government responds that it has contacted the case agents and all have informed counsel for the government that they are not aware of any evidence having been destroyed. (Docket No. 375 at 25.) No defendant has submitted a reply to the government's response. Accordingly, based upon the government's representation, the defendants' motions are moot and shall be denied as such.

**MOTIONS FOR DISCLOSURE OF CO-CONSPIRATOR STATEMENTS**

Six defendants have filed motions seeking the court to order the government to disclose the statements of co-conspirators. (Docket No. 278, 284, 302, 312, 322, 352.) The government responds that it "has already provided such statements as part of open-file discovery and will continue to provide additional statements as they are memorialized in reports and provided to government counsel for dissemination in discovery." (Docket No. 375 at 16.) No defendant has replied. Accordingly, based upon the government's representation, the defendants' motions are moot and shall be denied as such.

**MOTIONS FOR DISCLOSURE OF ELECTRONIC SURVEILLANCE**

Four defendants have filed motions seeking the court to order the government to disclose whether electronic surveillance was utilized in the investigation of this case. Two defendants submitted identical motions simply asking the government to admit or deny whether any evidence was illegally obtained by way of electronic surveillance. (Docket Nos. 292, 307.) The other two defendants filed their own identical boilerplate motions, both of which seek the court to compel, in

part, disclosure by the "United States Attorney for the Western District of Wisconsin [sic], and his assistants," and seek many more specific disclosures. (Docket Nos. 273, 324.)

The government responds that it has already provided copies of the one-party consensually recorded telephone calls and controlled buys and these previously disclosed recordings are the only electronic surveillance that occurred in this case. (Docket No. 375 at 22-23.) Further, no applications for other electronic intercepts were made in this case. (Docket No. 375 at 23.) No defendant has replied. Accordingly, based upon the government's representation, the defendants' motions are moot and shall be denied as such.

## MOTION TO PRESERVE EVIDENCE AND RELATED MOTIONS

Five defendants have filed motions seeking the court to order that all personnel who took part in the investigation of this case preserve all rough notes taken as part of this investigation. (Docket No. 279, 298, 310, 327, 357.) The government responds that it "has directed federal and state law enforcement officers to retain and preserve their handwritten notes pursuant to the defendants' requests." (Docket No. 375 at 24.) No defendant has responded. Accordingly, based upon the government's representation, the defendants' motions are moot and shall be denied as such.

Ryan McMorris has filed a sweeping boilerplate motion seeking the government to not only preserve rough notes of investigators but also preserve things such as "buildings . . . which relate in any manner to this case." (Docket No. 351 at 1.)

He also seeks the court order the government to provide him with

(a) reasonable notice of the prospective absence or unavailability (specifically including but not limited to deportation) of any and all witnesses who are known, or by the exercise of due diligence should become known, to the prosecution team and who have information, or were so situated that they would reasonably be expected to have information, which relates in any manner to this case; and, (b) reasonable opportunity to interview such witnesses and secure compulsory process for obtaining their presence and testimony in Court; all before the absence or unavailability occurs.

13

(Docket No. 351 at 1.)

As for the first aspect of the defendant's request, the government states that it has instructed its agents to preserve evidence pursuant to the defendant's request. (Docket No. 375 at 25.) Accordingly, based upon the government's representation, the defendant's motion is moot and shall be denied as such.

As for the second aspect of the defendant's request, the government states that it is unaware that any of its witnesses will be unavailable. (Docket No. 375 at 25.) If a witness the government intends on calling at trial becomes unavailable, the defendant is not necessarily entitled to relief. The issue then is the reason for the witness's unavailability. (Docket No. 375 at 25.) This is a matter that must await trial. As such, the court finds the defendant's request to be premature, as well as overbroad, and therefore it shall be denied.

McMorris also filed a motion seeking production of the rough notes of any interview of the defendant. (Docket No. 349.) The government responds that Mr. McMorris was not interviewed in connection with this case. (Docket No. 375 at 24.) The defendant has not replied. Accordingly, based upon the government's representation, the defendant's motion is moot and shall be denied as such.

**MOTIONS TO COMPEL NOTICE**

Ryon Perkins filed a motion seeking to compel notice under Fed. R. Crim. P. 12(d)(2) of the government's intent to use evidence. (Docket No. 365.) First off, Rule 12 of the Federal Rules of Criminal Procedure has not had subparts of section (d) since the 2002 amendments, and thus the rule cited by the defendant do not exist. The court presumes that the defendant intended to refer to what is now Fed. R. Crim. P. 12(b)(4)(B). This rule states:

> At the arraignment or as soon afterward as practicable, the defendant may, in order to have an opportunity to move to suppress evidence under Rule 12(b)(3)(C), request notice of the government's intent to use (in its evidence-in-chief at trial) any evidence that the defendant may be entitled to discover under Rule 16.

14

Fed. R. Crim. P. 12(b)(4)(B).

Like Federal Rule of Evidence 404(b), the rule provides for a "request" by the defendant. The obligation to disclose is automatic and thus motions seeking to compel such disclosure are unnecessary absent some resulting dispute between the parties. (See Docket No. 370 at 1-2; see also Docket No. 290 (identical document filed by Brandon Evans but properly filed as a "request" rather than a motion).)

Nonetheless, the government has responded and stated that it is following its open file policy and thus has turned over all information subject to discovery under Rule 16, and states that it intends to use all of it against the defendants.

In light of the government's disclosure, the defendant's motion is moot and shall be denied as such.

## MOTIONS FOR DISCLOSURE OF INTENT TO INTRODUCE CERTAIN EVIDENCE

Jarren Gardner filed a motion seeking the court to order the government to disclose its intent to introduce evidence pursuant to Federal Rules of Evidence 404(b), 607, 608, 609(a), 609(a)(2), 801(d)(2)(E), 807. (Docket No. 338.) Damien T. Searcy also filed a motion a similar court order with respect to the government's intent to introduce evidence pursuant to Rules 404(b) and 608(b). (Docket No. 313.) Mr. Searcy requests that these disclosures be made within 90 days of his motion. Docket No. 313.) For the reasons discussed below, these motions shall be denied.

As this court discussed previously, "motions" for disclosure under Rule 404(b) are improper. (Docket No. 370 at 1-2.) Rather, the Rule requires merely a "request" as opposed to a motion to trigger the government's automatic disclosure obligation. But the government is obligated to provide "reasonable notice in advance of trial." Fed. R. Ev. 404(b). Mr. Searcy has requested disclosure be made within 90 days of his motion. The court is not persuaded that disclosure by this deadline is necessary.

As for all of the defendants' other requests, neither defendant cites any authority to suggest that the court may order such disclosure or that the government has an obligation to make such disclosures.

As for Mr. Gardner's request for disclosure of statements that the government intends to introduce pursuant to Rule 801(d)(2)(E), although he cites Bourjaily v. United States, 483 U.S. 171 (1987) and United States v. Santiago, 582 F.2d 1128 (7th Cir. 1978), these cases do not hold that pretrial disclosure is required but rather relate to the admissibility of such statements. As this court explained previously, when it comes to statements under Rule 801(d)(2)(E), "[i]n this district, it is the well-established long-standing practice to conditionally admit statements of alleged co-conspirators subject to the government showing that they are admissible in accordance with the Santiago considerations." (Docket No. 370 at 5.)

**MOTIONS FOR A BILL OF PARTICULARS**

Four defendants have filed motions seeking a bill of particulars. (Docket No. 293, 319, 356, 369.)

**Damien Searcy** seeks the court to order the government to provide a bill of particulars

citing specifically (by Bates No.) which items of evidence are being offered as to each specific defendant. Further, that said order directs the government to identify with particularity how each defendant, including Searcy, how it intends to prove the knowing and intentional entry into the alleged conspiracy in Count 1 of the Indictment.

(Docket No. 293 at 1.)

**Daryll A. Winkler** seeks the court to order the government to provide a bill of particulars specifying:

(1) the date upon which defendant Winkler allegedly joined the conspiracy charged and his last dated of alleged participation; (2) the date prior to March 20, 2008 by which the conspiratorial agreement between any of defendant's coconspirators was reached; and (3) the identities of "persons known" to the grand jury who allegedly were defendant's coconspirators.

(Docket No. 319 at 1.)

**Fayzel Mosley** seeks the court to order the government to provide a bill of particulars providing the same information requested by Damien Searcy, (see Docket No. 293 at 1), as well as "the dates when the government alleges the particular defendant entered the conspiracy." (Docket No. 356 at 1.)

**Allen Sutton** seeks the court to order the government to provide a bill of particulars indicating "how it intends to prove that Sutton knowingly and intentionally entered the conspiracy alleged in Count 1." (Docket No. 369 at 1.)

The government opposes the defendants' requests and states that the indictment and the discovery sufficiently inform the defendants of the charges against them. (Docket No. 375 at 3-6.) Daryll A. Winkler and Damien Searcy have replied. (Docket Nos. 379, 380.) Damien Searcy simply disagrees with the government that the discovery is sufficient to inform him how the government intends to prove that he entered into the conspiracy alleged in Count 1. (Docket No. 380 at 2-3.) Daryll A. Winkler's reply is more specific and shall be addressed below.

Federal Rule of Criminal Procedure 7(f) permits the court, at its discretion, to order the government to provide a defendant with a bill of particulars. A court need not order the government to provide a bill of particulars if the "indictment sufficiently apprises the defendant of the charges to enable him to prepare for trial." United States v. Canino, 949 F.2d 928, 949 (7th Cir. 1991) (citing United States v. Kendall, 665 F.2d 126, 134 (7th Cir. 1981)). "Information relevant to the preparation of a defense includes the elements of each charged offense, the time and place of the accused's allegedly criminal conduct, and a citation to the statute or statutes violated." United States v. Blanchard, 542 F.3d 1133, 1140 (7th Cir. 2008). Even if the indictment does not provide all essential information, a bill of particulars is not necessary if the necessary information is available through some other

satisfactory means such as discovery or the government's open file policy. Id. (quoting United States v. Hernandez, 330 F.3d 964, 975 (7th Cir. 2003)); Canino, 949 F.2d at 949.

Finally, although a defendant is entitled to know the nature of the charges against him and the government's theory of prosecution, the defendant is not entitled to know precisely how the government intends to prove its case. United States v. Agostino, 132 F.3d 1183, 1191 (7th Cir. 1997) (quoting United States v. Kendall, 665 F.2d 126, 135 (7th Cir. 1981)).

Defendants Damien Searcy and Allen Sutton, explicitly seek a bill of particulars specifying how the government intends to prove its case against the defendants. The defendants are not entitled to such information, Agostino, 132 F.3d at 1191, and thus these motions, (Docket Nos. 293, 369), shall be denied. Fayzel Mosley, also seeks, in part, that the court order the government to disclose in a bill of particulars how it intends to prove its case against him, and thus this aspect of Mr. Mosley's motions shall be denied. (Docket No. 356.)

However, Mr. Mosley as well as Daryll A. Winkler, also request that the court order the government to disclose in a bill of particulars the date that the government alleges they each joined the conspiracy. (Docket Nos. 356, 319.) In light of the broad temporal scope of the conspiracy, "[b]eginning by at least 2006, and continuing through October 14, 2009," (Docket No. 1), the time Mr. Mosley and Mr. Winkler are alleged to have joined the conspiracy, if each was not a member at its inception, is information essential to ensuring various constitutional rights that is not likely to be found in the discovery. See United States v. Rodriguez, 2009 U.S. Dist. LEXIS 38695 (E.D. Wis. Apr. 24, 2009). Accordingly, these aspects of Mr. Mosley and Mr. Winkler's requests will be granted. Within 30 days of this order, the government shall provide to Mr. Mosley and Mr. Winkler a bill of particulars identifying the date (month and year) each is alleged to have joined the conspiracy if each was not alleged to be a member at the inception of the conspiracy.

As for the other aspects of Mr. Winkler's motion, these requests shall be granted in part and denied in part. First, Mr. Winkler requests the government state in a bill of particulars "his last dated [sic] of alleged participation." (Docket No. 319 at 1.) A defendant no longer actively participating in a conspiracy is not necessarily equivalent to an individual withdrawing from a conspiracy. However, if a defendant did withdraw from this conspiracy, this information, just like the date he is alleged to have joined the conspiracy, may be crucial to preparing an adequate defense and is not necessarily likely to be found in discovery. Therefore, if the government alleges that Mr. Winkler withdrew from the conspiracy prior to the end date referenced in the indictment, the government shall, within 30 days of this order, provide to Mr. Winkler the date (month and year) he allegedly withdrew from the conspiracy.

With respect to Mr. Winkler's request for "the date prior to March 20, 2008 by which the conspiratorial agreement between any of defendant's coconspirators was reached," the defendant contends that this information is necessary because "the discovery is more in line with a conspiracy beginning in 2008 and not 2006," (Docket No. 319 at 3), as is alleged in the indictment. The court is not persuaded that this information is essential to adequately inform Mr. Winkler of the charges against him. The indictment says the conspiracy began by "at least 2006." (Docket No. 1.) Simply because the defendant does not believe that the government could prove this fact does not mean that he is entitled to a bill of particulars where the government would contradict the indictment. Thus, this aspect of Mr. Winkler's motion shall be denied.

Finally, Mr. Winkler seeks the disclosure of the identities of unindicted co-conspirators. The court finds that this request is appropriate. In a case such as this where a far-reaching conspiracy is alleged and where there are apparently a number of co-conspirators who, for whatever reason, have not been indicted, disclosure of these non-indicted individuals the government alleges to have been members of the conspiracy is essential to permit Mr. Winkler to prepare an adequate defense. See

United States v. Urbina, 2007 U.S. Dist. LEXIS 55589 (E.D. Wis. July 31, 2007). However, disclosing the identities of unindicted co-conspirators, as the motions to disclose the identities of confidential informants discussed above make clear, runs up against the government's informer privilege. The court is not persuaded that the actual identities of any confidential informants is necessary to permit Mr. Winkler discern the scope of the conspiracy alleged; rather, identifying each unindicted co-conspirator either by name or, where privileged, by a CI number or other moniker used in discovery, will suffice. Accordingly, the court shall order the government to provide to Mr. Winkler within 30 days of this order a bill of particulars identifying the names or CI number if the identity of these individuals is privileged, of all unindicted alleged co-conspirators known to the government.

**MOTIONS FOR DISCLOSURE OF JENCKS ACT MATERIAL**

Four defendants have filed motions seeking the court to order the government to disclose Jencks Act, see 18 U.S.C. § 3500, material in advance of trial. Brandon Evans seeks disclosure of Jencks Act material 20 days before trial. (Docket No. 299.) Damien T. Searcy and Ryan McMorris seek disclosure 30 days before trial. (Docket No. 309, 346.) Jarren D. Gardner seeks merely "early" disclosure. (Docket No. 339-1.) The government responds that it has agreed to make most of the material covered by the Jencks Act part of its open file policy. (Docket No. 375 at 17.) It continues:

> The only Jencks' material currently in the government's possession are statements of law enforcement officers. With the exception of grand jury materials, such statements have been disclosed. However, the government is aware of its continuing obligation under the Jencks Act and will continue to disclose witness statements as they become available. The government will also disclose grand jury transcripts of its witnesses one week prior to trial.

(Docket No. 375 at 17.)

As the court understands the government's response, the only testimony before the grand jury that will be subject to disclosure under the Jencks Act is the testimony of law enforcement officers. No defendant has offered a persuasive reason as to why the one week before trial that the

20

government has agreed to disclose any remaining Jencks Act material is insufficient time to adequately review these transcripts in advance of trial. Accordingly, the motions shall be denied.

## GRAND JURY RELATED MOTIONS

Brandon C. Evans filed a motion seeking disclosure of the minutes of the grand jury proceedings. (Docket No. 297.) Damien T. Searcy has filed two motions related to grand jury proceedings. In the first he seeks the court to disclose a wide variety of information:

1. The number of grand jurors present at each session during which this indictment and evidence relating thereto or to this defendant was considered.

2. The number of grand jurors present during the deliberations on the presentment of this indictment.

3. The number of grand jurors concurring in the presentment of this indictment.

4. The identify [sic] of any and all grand jurors that were disciplined, removed, or subject to any action whatsoever because of any impropriety or alleged impropriety that occurred during their service.

5. The identity of any agents appointed by or to the grand jury and by whose request and by what authority such appointments were made as well as what disclosures were made to such individuals or any others and by what authority and procedure.

6. A copy of the instructions or the transcript of the instructions given to the grand jury as to their role and function and as to each offense and element thereof on which they were asked to vote in this case.

7. The transcripts, and if none were made, then the substance of the testimony of each witness who appeared before the grand jury including those regarding this defendant or any charges presently pending against him.

8. The identity of each grand juror who is or has been connected with a state or federal law enforcement agency.

9. Copies of all orders of immunity and letters of immunity of all witnesses who testified before or provided information for the grand jury conducting this investigation.

(Docket No. 306.) In a separate motion Mr. Searcy requests a transcript of the legal instructions provided to the grand jury even though such information would seem to be included in paragraph 6 of his request quoted above. (Docket No. 311.)

The court shall deny the defendants' motions. "Our judicial system consistently has recognized that the proper functioning of grand jury proceedings depends upon their absolute secrecy." In re Grand Jury Proceedings, 942 F.2d 1195, 1198 (7th Cir. 1991). Federal Rule of Criminal Procedure 6(e) codifies this requirement of secrecy. "[T]he standard for determining when the traditional secrecy of the grand jury may be broken is deliberately stringent." In re Grand Jury Proceedings, 942 F.2d at 1198. It is not enough for a defendant to show that the information would be relevant or useful. Hernly v. United States, 832 F.2d 980, 984 (7th Cir. 1987). Rather, disclosure will be ordered only if the defendant is able to demonstrate a "compelling necessity" or a "particularized need." In re Grand Jury Proceedings, 942 F.2d at 1198. The defendant must show "must show that the material they seek is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only material so needed." Id.

Brandon C. Evans makes no effort to support his request; he simply states he wants the minutes "to determine whether or not there has been compliance with Federal Rules of Criminal Procedure 6(d)." (Docket No. 297.) Damien T. Searcy's explanation for the numerous requests quoted above is that he "seeks the information requested herein to protect his constitutional right to due process, equal protection of the law and such other rights as obtain." (Docket No. 306 at 2.) As for his other motion seeking only the legal instructions provided to the grand jury, Mr. Searcy contends that "[a]bsent disclosure of the grand jury instructions, defense counsel will be unable to consider a later motion challenging the indictment on grounds that the legal instructions interfered with the grand jury's basic function." (Docket No. 311 at 2.)

All of the defendants' proffered reasons are woefully insufficient to merit the disclosure of the grand jury information requested. See Lucas v. Turner, 725 F.2d 1095, 1102 (7th Cir. 1984).

The defendants' requests are based upon nothing more than bald speculation, and thus the defendants merely seek to undertake a proverbial fishing expedition.

## MOTION FOR SEVERANCE

Damien T. Searcy has filed a motion seeking severance pursuant to Federal Rules of Criminal Procedure 8, 12(b)(5) (a Rule that does not exist), and 14. (Docket No. 295 at 1.) Mr. Searcy contends that severance is appropriate because he would be unfairly prejudiced by a joint trial because of a disparity in the evidence. Of the roughly 3500 pages of discovery, Mr. Searcy is allegedly mentioned in only 59 pages that relate to Count 8 of the indictment and in about 8 other pages detailing statements by various CIs. (Docket No. 295 at 2, 9-12.) Further, Mr. Searcy contends that the introduction of other co-defendants' statements may jeopardize his right to confrontation. (Docket No. 295 at 3-4.) He also speculates that he might be prejudiced by an inability to call a co-defendant who may be able to provide exculpatory testimony. (Docket No. 295 at 6-9.) Finally, he contends that he would be prejudiced because his defense is antagonistic to the defense of his co-defendants and that a joint trial would limit his ability to impeach his co-defendants. (Docket No. 295 at 4-5.)

Federal Rule of Criminal Procedure 8(b) permits the government to charge two or more defendants in a single indictment "if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Rule 14 permits a court to sever joined defendants and order separate trials if "a consolidation for trial appears to prejudice a defendant." The defendant does not allege that he was improperly joined pursuant to Rule 8(b) but rather seeks relief from prejudicial joinder pursuant to Rule 14.

> [A] district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence. Such a risk might occur when evidence that the jury should not consider against a defendant and that would not be admissible if a defendant were tried alone is admitted against a codefendant. For example, evidence of a codefendant's wrongdoing in some

circumstances erroneously could lead a jury to conclude that a defendant was guilty. When many defendants are tried together in a complex case and they have markedly different degrees of culpability, this risk of prejudice is heightened. Evidence that is probative of a defendant's guilt but technically admissible only against a codefendant also might present a risk of prejudice. Conversely, a defendant might suffer prejudice if essential exculpatory evidence that would be available to a defendant tried alone were unavailable in a joint trial. The risk of prejudice will vary with the facts in each case, and district courts may find prejudice in situations not discussed here.

Zafiro v. United States, 506 U.S. 534, 539 (1993) (internal citations omitted).

A defendant is not entitled to severance simply because he may have a better chance of acquittal if he had a separate trial. Id. at 540. "Rather, [a defendant] 'must establish that he suffered actual prejudice' . . . by establishing that absent the granting of the severance motion, he was unable to obtain a fair trial." United States v. Stokes, 211 F.3d 1039, 1042 (7th Cir. 2000) (citations omitted). It is the defendant's burden to demonstrate a strong showing of prejudice. United States v. Moya-Gomez, 860 F.2d 706, 767-68 (7th Cir. 1988).

The risk of prejudice that may result from "evidentiary spillover" is ordinarily slight. United States v. Abdelhaq, 246 F.3d 990, 992 (7th Cir. 2001). Generally, any risk of prejudice will be eliminated by appropriate limiting jury instructions. Zafiro, 506 U.S. at 539, 541. "Moreover, courts also have a strong interest in favor of joinder of offenses; in particular, joinder of offenses reduces the waste of precious judicial and prosecutorial time in the already overburdened federal judicial system and reduces the burdens on witnesses from testifying at multiple trials." Stokes, 211 F.3d at 1042. The Seventh Circuit "has long recognized a presumption in favor of conducting a joint trial for persons who have been jointly indicted, especially in situations such as this where the indictment charges a conspiracy." United States v. Caliendo, 910 F.2d 429, 437 (7th Cir. 1990) (citing cases). "[A] simple 'disparity in the evidence' will not suffice to support a motion for severance -- i.e., it does not independently establish 'actual prejudice'." Id. at 438.

The court finds no merit to Mr. Searcy's claim that joinder was improper under Fed. R. Crim. P. 8. Mr. Searcy is charged in a conspiracy and the additional counts alleged in the indictment related to acts done in furtherance of and related to the conspiracy.

As for Mr. Searcy's claims of prejudicial joinder under Rule 14, at this point, the defendant has failed to demonstrate the existence of prejudice so as to warrant severance. Mr. Searcy's claims are based primarily upon speculation. Even if all of the defendants choose to exercise their right to a jury trial, obviously not all 39 of Mr. Searcy's co-defendants are going to go to trial at the same time. Rather, defendants shall be grouped together for several smaller joint trials.

Whether Mr. Searcy's right to confrontation will be compromised by a joint trial will depend upon which co-defendants he is grouped with for trial. With whom Mr. Searcy's is grouped for trial will also affect all other aspects of Mr. Searcy's claim of prejudice. Whether there will be a risk of actual prejudice at trial that cannot be appropriately remedied through some means other than severance, is an issue that cannot be adequately resolved at this time. Accordingly, the defendant's motion for severance shall be denied without prejudice.

**MOTIONS BEST RESERVED FOR THE TRIAL JUDGE**

This court's role in this matter is limited to assisting Judge Lynn Adelman in the processing of the defendants' pretrial motions. Because Judge Adelman will be presiding over any trial in this matter, this court finds that those motions that would directly affect his management of any trial are best deferred to Judge Adelman. Accordingly, the court shall deny the following motions without prejudice and grant the defendants leave to refile these motions before Judge Adelman in accordance with a subsequent scheduling order of Judge Adelman or as motions in limine:

Defendants Daryll A. Winkler and Ryon Perkins' motions to exclude evidence of gang membership and activity. (Docket Nos. 318, 361.)

Case 2:09-cr-00248-LA   Filed 04/07/10   Page 25 of 31   Document 388

Defendant Ryan McMorris' motion seeking disclosure of any summary evidence at least 21 days prior to trial. (Docket No. 343.)

**IT IS THEREFORE ORDERED:**

Christopher Williams' motion to disclose the names of confidential informants that the government intends to call as witnesses, (Docket No. 275), is **granted**. The government shall disclose the identities of all confidential informants it intends to call at trial in its case in chief not later than **30 days** before the commencement of trial.

Maceo Collins' motion to disclose the names of confidential informants that the government intends to call as witnesses, (Docket No. 286), is **granted**. The government shall disclose the identities of all confidential informants it intends to call at trial in its case in chief not later than **30 days** before the commencement of trial.

Brandon C. Evans' motion to disclose the names of confidential informants that the government intends to call as witnesses, (Docket No. 308), is **granted**. The government shall disclose the identities of all confidential informants it intends to call at trial in its case in chief not later than **30 days** before the commencement of trial.

Darrick Holmes' motion to disclose the names of confidential informants that the government intends to call as witnesses, (Docket No. 326), is **granted**. The government shall disclose the identities of all confidential informants it intends to call at trial in its case in chief not later than **30 days** before the commencement of trial.

Christopher Williams' motion to disclose the identities of all informants who are participants in the alleged crimes charged in the Indictment, (Docket No. 274), is **granted**. The government shall disclose the identities of all confidential informants who were transactional witnesses to the crimes charged in the indictment not later than **30 days** before the commencement of trial.

Brandon C. Evans' motion to disclose the identities of all informants who are participants in the alleged crimes charged in the Indictment, (Docket No. 317), is **granted**. The government shall disclose the identities of all confidential informants who were transactional witnesses to the crimes charged in the indictment not later than **30 days** before the commencement of trial.

Darrick Holmes' motion to disclose the identities of all informants who are participants in the alleged crimes charged in the Indictment, (Docket No. 325), is **granted**. The government shall disclose the identities of all confidential informants who were transactional witnesses to the crimes charged in the indictment not later than **30 days** before the commencement of trial.

Ronnie McMorris' motion to compel the disclosure of confidential informants, (Docket No. 281), is **granted**. The government shall disclose the identities of "CI 2, 5, 6, 7, 8, 9, 12, 13, 14, 15, 17, 18, and 'CHS'" not less than **30 days** before the commencement of trial.

Tyrone Malone's motion to compel the disclosure of confidential informants, (Docket No. 282), is **granted**. The government shall disclose the identities of "CI-6, CI-8, CI-10, CI-14, CI-15, CI-20, CI-21, and 'CHS'" (transactional witnesses) and all other informants who "have no knowledge of Tyrone Malone, or have never witnessed Tyrone Malone conduct a drug transaction, or claim that Tyrone Malone has not dealt drugs within the time of the alleged conspiracy" (exculpatory witnesses), not less than **30 days** before the commencement of trial.

Calvin Hunter's motion to compel the disclosure of confidential informants, (Docket No. 321), is **granted**. The government shall disclose the identities of "CI-1, CI-3, CI-4, CI-6, CI-7, CI-9, CI-10, CI-12, CI-13 and CI-20" (transactional witnesses) and "CI-2, CI-5, CI-8, CI-11, CI-14, CI-15, CI-17, CI-18 and CI-21," (exculpatory witnesses) not less than **30 days** before the commencement of trial.

Jarren Gardner's motion to compel the disclosure of confidential informants, (Docket No. 340), is **granted**. The government shall disclose the identities of "'CI 906' (Confidential Informant

[No.] 906)–during transactions alleged on 10-16-2008 and 10-27-2008; 'CHS' (Confidential Human Source)–during transactions alleged on 06-17-2008; 08-28-2008; 10-22-2008; 11-19-2008; 11-25-2008; 06-18-2009; 08-28-2009; and 'CI' (Confidential Informant,)–during transactions alleged on 10-16-2008 and 11-12-2008" not less than **30 days** before the commencement of trial.

Tyreese Burton's motion to compel the disclosure of confidential informants, (Docket No. 354), is **granted**. The government shall disclose the identities of "CI's 1, 2, 3, 4, 5, 6, 8, 9, 10, 11, 12, 14, 15, 17, 18, and 20" not less than **30 days** before the commencement of trial.

Allen Sutton's motion to compel the disclosure of confidential informants, (Docket No. 366), is **granted**. The government shall disclose the identities of "confidential informants 7, 20, 21, and 22" and any other confidential informants who were transactional witnesses to an act alleged in the indictment not less than **30 days** before the commencement of trial.

Ryan McMorris' motion to compel the disclosure of confidential informants, (Docket No. 342), is **granted**. The government shall disclose the identities of "CIs 1, 3, 12, 13, 14, 17, 18, 20, 21, and 22 (transactional witnesses)" and "CIs 2, 4, 5, 6, 8, 9, 10, 11, and 15" (exculpatory witnesses), not less than **30 days** before the commencement of trial.

Daryll A. Winkler's motion to compel the disclosure of confidential informants, (Docket No. 320), is **granted**. The government shall disclose the identities of "CI-25 and CI-27" not less than **30 days** before the commencement of trial.

Ryon Perkins' motion to compel the disclosure of confidential informants, (Docket No. 364), is **denied**.

Elliot Campbell's motion to compel the disclosure of confidential informants, (Docket No. 332), is **denied**.

Damien T. Searcy's motion to compel the disclosure of confidential informants, (Docket No. 301), is **granted** as follows: The government shall disclose the identities of all transactional

witnesses involved in acts that form the basis for the indictment against Damien T. Searcy not less than **30 days** before the commencement of trial.

The motions for disclosure of exculpatory evidence, (Docket Nos. 272, 288, 294, 300, 316, 323, 337, 344, 359), are **denied**.

The motions for disclosure of expert witnesses, (Docket No. 304, 331, 345), are **denied**. The government shall disclose its experts and related material not less than **45 days** before trial.

The motions for disclosure of destruction of evidence, (Docket Nos. 276, 303, 291, 333, 350,) are **denied as moot.**

The motions for disclosure of co-conspirator statements, (Docket No. 278, 284, 302, 312, 322, 352), are **denied as moot.**

The motions for disclosure of electronic surveillance, (Docket Nos. 273, 292, 307, 324), are **denied as moot.**

The motions to preserve the rough notes of law enforcement, (Docket No. 279, 298, 310, 327, 357), are **denied as moot**.

Ryan McMorris' motion to for the preservation of rough notes of the interview of the defendant, (Docket No. 349), is **denied as moot.**

Ryan McMorris' motion for the preservation of evidence, (Docket No. 351), is **denied**.

Ryon Perkins' motion to compel notice, (Docket No. 365), is **denied as moot.**

Jarren Gardner and Damien T. Searcy's motions for disclosure, (Docket Nos. 338, 313), are **denied.**

Damien Searcy's motion for a bill of particulars, (Docket No. 293), is **denied**.

Daryll A. Winkler's motion for a bill of particulars, (Docket No. 319), is **granted in part and denied in part**. Within **30 days** of this order the government shall provide the defendant with a bill of particulars as follows:

- identifying the date (month and year) he is alleged to have joined the conspiracy if each was not alleged to be a member at the inception of the conspiracy;

- identifying the date (month and year) he allegedly withdrew from the conspiracy if the government alleges that he withdrew from the conspiracy prior to the end date referenced in the indictment; and

- identifying the names or CI number if the identity of these individuals is privileged, of all unindicted alleged co-conspirators known to the government.

Fayzel Mosley's motion for a bill of particulars, (Docket No. 356), is **granted in part and denied in part**. Within **30 days** of this order the government shall provide the defendant with a bill of particulars identifying the date (month and year) he is alleged to have joined the conspiracy if each was not alleged to be a member at the inception of the conspiracy.

Allen Sutton's motion for a bill of particulars, (Docket No. 369), is **denied.**

The motions for early disclosure of Jencks Act materials, (Docket Nos. 299, 309, 339-1, 346), are **denied**.

Brandon C. Evans' motion seeking disclosure of the minutes of the grand jury proceedings, (Docket No. 297), is **denied**.

Damien T. Searcy's motion for disclosure of grand jury information, (Docket No. 306), is **denied**.

Damien T. Searcy's motion for disclosure of grand jury instructions, (Docket No. 311), is **denied**.

Damien T. Searcy's motion for severance, (Docket No. 295), is **denied without prejudice**.

Daryll A. Winkler and Ryon Perkins' motions to exclude evidence of gang membership and activity, (Docket Nos. 318, 361), are **denied without prejudice**.

Ryan McMorris' motion seeking disclosure of any summary evidence at least 21 days prior to trial (Docket No. 343), is **denied without prejudice**.

Your attention is directed to 28 U.S.C. § 636(b)(1)(A) and Fed. R. Crim. P. 59(a) (as amended effective December 1, 2009) whereby written objections to any order herein or part thereof may be filed within fourteen days of service of this order. Objections are to be filed in accordance with the Eastern District of Wisconsin's electronic case filing procedures. Courtesy paper copies of any objections shall be sent directly to the chambers of the district judge assigned to the case. Failure to file a timely objection with the district court shall result in a waiver of a party's right to appeal.

Dated at Milwaukee, Wisconsin this <u>7th</u> day of April, 2010.

<u>s/AARON E. GOODSTEIN</u>
U.S. Magistrate Judge